**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN ANDREWS, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | **CIVIL ACTION NO. 25-CV-5190** |
| | : | |
| DR PAUL LITTLE, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**WEILHEIMER, J.**                                                                      **July 7, 2026**

*Pro se* Plaintiff Kevin Andrews brings this civil action pursuant to 42 U.S.C. § 1983, naming as Defendants Paul Little and John Nicholson, two medical providers employed by Wellpath, the third-party medical services contractor at SCI Chester, where Andrews is incarcerated.  Currently before the Court is the Defendants' Motion to Dismiss Andrews's Complaint.  For the following reasons, the Court will grant the Motion to Dismiss.

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

Andrews asserts that on September 10, 2023, he "began to experience severe chest pains and shortness of breath."  (Compl. at 6.)  He went to the medical department and was seen by nurses who "performed the necessary tests for vitals and commented that [Andrews] was 'coming down with a cold.'"  (*Id.*)  When Andrews protested that he thought his condition was more severe than a cold, the nurses called Defendant Little, the SCI Chester Medical Director.  (*Id.*)  Little told

---

[1] The facts set forth in this Memorandum are taken from Andrews's Complaint (ECF No. 1).  The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.  Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

the nurses to send Andrews back to his housing unit and have him return to the medical department the next day. (*Id.*)  The nurses told Andrews that if his condition worsened, he should let the corrections officer know and return to the medical department. (*Id.*)  Andrews walked back to his cell and, when he reached the top of the three flights of stairs he had to climb, he "bent over in distress and pain unable to breathe." (*Id.*)  "Several hours later . . . [Andrews] was experiencing increased chest pain and shortness of breath." (*Id.*)  Andrews went back to the medical department, and when Little was contacted again, he "refused" Andrews's request to go to the hospital and told him to sign up for a sick call the next day. (*Id.*)  The "nurses remained convinced that [Andrews] was experiencing symptoms of a common cold and recommended that [Andrews] get some fresh air by going outside for a while." (*Id.* at 7.)

The next day, Andrews went to the medical department because "he was still struggling to breathe and the chest pains increased dramatically." (*Id.*)  Instead of being seen by Little, Andrews was examined by Defendant Nicholson. (*Id.*)  Andrews told Nicholson that his symptoms were "shortness of breath along with severe chest pains that ha[d] become worse by the minute," and asked Nicholson to send him to the hospital. (*Id.*)  Nicholson "instructed [Andrews] to do a walking exercise by moving quickly from one door to the next in the main hallway," after which Andrews told Nicholson that he "felt like he was on the verge of death, gasping for air and wheezing along with sharp chest pains like he was being stabbed." (*Id.*)  Andrews continued asking to be sent to the hospital, but Nicholson stated, "with medical certainty that [Andrews]'s condition was a result of symptoms consistent with a common cold." (*Id.*)  Nicholson also refused Andrews's request to stay overnight in the infirmary but scheduled a chest x-ray for the next day. (*Id.* at 7-8.)

The following day, September 12, Andrews returned to the medical department at 8:45 a.m., and Little "refused treatment and examination," but "referred [Andrews] to [the] scheduled x-ray technician." (*Id.* at 8.)  The x-ray revealed that Andrews "has a completely collapsed right lung." (*Id.*)  "The x-ray technician suggested that Defendant Little call 911," and Andrews was taken to the emergency room at Crozer Hospital.  (*Id.*)  At the hospital, Andrews underwent a CT scan, "was diagnosed with . . . a spontaneous pneumothorax," and underwent surgery on September 14.  (*Id.*)  Andrews was also "told by Doctors at Crozer Hospital that the CT scan revealed the presence of several [blebs][2] on [his] right lung," and he "was recommended to a lung specialist at Temple University Hospital" to have the blebs removed.  (*Id.* at 9.)

When Andrews returned to SCI Chester, he was placed in the infirmary for his recovery. (*Id.*)  On September 18, 2023, Little came to his cell and "questioned [Andrews] about whether or not he wanted Temple University Hospital to perform the procedure" to remove the blebs.  (*Id.*) Andrews asserts that he had already told the "Doctors at Crozer Hospital that he wanted a lung specialist from Temple University Hospital to perform [the] required procedure [but] Defendant Little intentionally confused the matter so as to make it look and sound like [Andrews] didn't want further treatment from Temple University Hospital." (*Id.*)

Andrews was taken to Temple University Hospital on December 8, 2023, where he had surgery to remove the blebs.  (*Id.*)  His surgeon prescribed Oxycodone and Dilaudid for his pain. (*Id.*)  "Defendant Little refused to provide said medication and instead [gave Andrews] Tylenol 3

---

[2]  Andrews uses the term "BLAABS" in his Complaint, but the Court understands him to mean "blebs," that is, "[a]n air-filled lung cyst within or contiguous to the visceral pleura, usually seen radiologically at the lung apex; more likely to develop and to rupture with resulting pneumothorax in taller people."  Stedmans Medical Dictionary B22590, Westlaw (database updated January 2025).

as a substitute." (*Id.*)  Andrews states that he asked the surgeon "if Tylenol 3 was a proper equivalent to Oxycodone and/or Dilaudid," and she said no. (*Id.*)  He alleges that "Little was adamant about wanting to change the prescribed medication so as to further cause unnecessary pain in [Andrews]'s surgery recovery." (*Id.*)  Andrews states that on December 12, nurses told him that his prescription "might change due to shortages." (*Id.*)  When he reported to nurses and Little that day that the Tylenol 3 was not working, "Little again changed [the] prescribed medication from Tylenol 3 to Tramadol." (*Id.*)  Andrews asserts that he told Little the Tramadol also did not work, that he was in "extreme pain" and that "prescribing these medications that do not work is the equivalent of having no medication at all." (*Id.* at 9-10.)  He alleges that Little referred to his sutures as a "boo boo" and that "Little did all he could to minimize and undermine the seriousness" of Andrews's condition. (*Id.* at 10.)

Andrews asserts that he was initially "suffering from a *partial* collapsed right lung," and that Little and Nicholson's "refusal of medical care resulted in the *complete* collapse of [his] right lung and cause[d] wanton infliction of pain and suffering" between his first visit to the medical department on September 10 and sending him to the hospital on September 12. (*Id.* at 11.)  He further alleges that Little failed to properly treat his post-surgical pain with the "valid medication." (*Id.*)  He seeks damages. (*Id.* at 12.)

Andrews paid his full filing fee when he submitted his Complaint to the Court in this action. (*See* ECF No. 3.)  The Defendants waived service of process and filed a Motion to Dismiss the Complaint for failure to state a claim. (*See* ECF Nos. 12, 14.)  Andrews filed a Response to the Defendants' Motion, (ECF No. 21), Defendants filed a Reply thereto, (ECF No. 22), and Andrews filed a sur-reply thereupon, (ECF No. 23).  Accordingly, the Motion is fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on*

*other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that *pro se* filings are construed liberally).

## III.   DISCUSSION

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[3] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

Deliberate indifference is properly alleged, "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical

---

[3] Andrews states that he was a convicted and sentenced state prisoner at the time of the events in his Complaint, and he asserts claims pursuant to both the Eighth and Fourteenth Amendments for deliberate indifference. (*See* Compl. at 4, 13.) Defendants correctly note that his claims are governed by the Eighth Amendment, (*see* ECF No. 14 at 14-16), as the Fourteenth Amendment is only implicated in a deliberate indifference claim brought by a pretrial detainee, *see Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). As the Defendants correctly note, Andrews includes no facts in his Complaint to support any other claim under the Fourteenth Amendment, (*see* ECF No. 14 at 14-17 (arguing that Andrews has not stated a due process or equal protection claim)), and the Court does not construe the Complaint to raise such a claim.

reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted), *petition for cert. filed sub nom. Pennsylvania v. Montanez*, 94 U.S.L.W. 3289 (U.S. Mar. 11, 2026) (No. 25-1073). "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)).

"Not every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic*, 854 F.3d at 227 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 228 (cleaned up). "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)); but *see Taylor v. Spraga*, 741 F. App'x 884, 886 (3d Cir. 2018) (noting that security and medical risks are sufficient grounds for prison officials to change an inmate's prescribed medication).

Andrews asserts deliberate indifference claims based on Little and Nicholson's misdiagnosis of his severe chest pains and trouble breathing as a common cold and their two-day delay in sending him to the hospital, as well as for Little's decisions regarding his post-surgery pain medication.[4]  The Defendants argue that the allegations in the Complaint fail to state a deliberate indifference claim because they allege nothing more than a disagreement over the course of treatment and, at most, negligence.  (*See generally* ECF No. 14 at 9-14 (citing, inter alia, *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)).)

"Mere negligence, . . . even if it constitutes medical malpractice[,] falls short of deliberate indifference.  So does mere disagreement between the prisoner and medical personnel over the proper course of treatment." *Montanez*, 154 F.4th at 141 (first citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); then citing *Spruill*, 372 F.3d at 235); *see also Palakovic*, 854 F.3d at 227 ("Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment.").  "[E]ven gross negligence[] is not enough [to amount to deliberate indifference] . . . A prison official must be at least subjectively reckless." *DiFraia v. Ransom*, 171 F.4th 622, 628 (3d Cir. 2026) (citing *Farmer*, 511 U.S. at 835–37 & n.4 (1994)).  "[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (quoting *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (noting that "the distinction between deliberate indifference and malpractice can be subtle")); *see also McKinley v. Stanish*, No. 21-00960, 2022 WL 4369974, at *7 (M.D. Pa. Sept. 21, 2022) ("[W]here a dispute in essence entails no more than a disagreement between an inmate and doctors

---

4  The Court does not understand Andrews's assertion that Little "intentionally confused the matter" of his referral for surgery to remove his blebs as a claim for deliberate indifference. (Compl. at 9.)  In any event, this vague allegation does not support a constitutional claim.

over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since the exercise by a doctor of his professional judgment is never deliberate indifference." (internal quotation marks omitted)).

Taking all of Andrews's well-pleaded allegations as true, he has failed to state a claim for deliberate indifference. When Andrews first reported his symptoms, the nurses who saw him believed he had a cold, and when they contacted Defendant Little, he told Andrews to come back the following day for evaluation. When Andrews returned the following day complaining that his symptoms had worsened, Defendant Nicholson had him do a walking test and also concluded that he was suffering from a cold. Nicholson did not send Andrews to the hospital on request but instead scheduled a chest x-ray for the next day. When Little received the x-ray results, he called 911 and sent Andrews to the hospital. Even assuming Little and Nicholson were negligent in their diagnosis of Andrews's condition, that misdiagnosis does not amount to deliberate indifference. *See Moreno v. Bosholm*, 151 F.4th 543, 573-74 (4th Cir. 2025) ("In general, good-faith efforts to remedy the plaintiff's problems will prevent finding deliberate indifference, absent extraordinary circumstances. That is why, for example, when medical personnel examine and diagnose a patient, where they try to help but fail to live up to expectations, that is more naturally described as negligence than indifference." (cleaned up)).

As to Andrews's claims regarding his medication, he does not allege that his medication was withheld or denied, he merely alleges that he was given Tylenol 3 instead of opioids and was told that his medications might change due to "shortages." (Compl. at 9.) When he told Little that Tylenol 3 was not working, he was given Tramadol; although he claims that he told Little that Tramadol also did not work, he states no facts about Little's response. (*Id.* at 9-10.) Accordingly, the only well-pleaded fact is that Little changed Andrews's medication once upon request. Even

9

if Andrews did not receive precisely the same medication prescribed by the surgeon, that discrepancy does not amount to deliberate indifference. *See Castro v. Kastora*, No. 18-1029, 2018 WL 4538454, at *6 (E.D. Pa. Sept. 20, 2018) ("The medical staff did not withhold pain medication. They merely exercised their medical judgment in providing [plaintiff] with a different medication than what he wanted. This does not state a claim for deliberate indifference."); *cf. White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness."); *Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) (*per curiam*) (concluding that where a defendant "exercise[ed] medical judgment" to provide plaintiff with a different pain medication, "[a]t most, [the] allegation amounts to a disagreement over the exact contours of [plaintiff's] medical treatment"). Accordingly, Andrews has failed to state a deliberate indifference claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. Because amendment would be futile, the Court will dismiss Andrews's Complaint with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). An order follows.

BY THE COURT:

_____
GAIL WEILHEIMER          J.

10